## BINDIA ROAN WARES, Appellant, v. CLEVELAND WARES, Respondent.

### Kansas City Court of Appeals, December 3, 1906.

1. **DIVORCE: Indignities: Youth.** The suggestion to a virtuous wife to get money from other men constitutes a statutory indignity; and in view of the marriage relation and its reciprocal duties all husbands and wives stand upon an equal footing under the law whether young or old.

2. ———: ———: **Rights of Parties.** The plaintiff is as much entitled to a decree when the evidence establishes a statutory ground of relief in a divorce case as in any other action and the court has no discretionary right to refuse it.

3. ———: **Endearing Letter: Accounting for Same.** Where an endearing letter from a female correspondent to a husband is introduced in evidence it becomes the duty of the husband to explain the same.

Appeal from Macon Circuit Court. — *Hon. Nat. M. Shelton,* Judge.

REVERSED AND DECREE GRANTED.

122 App—9

*R. S. Matthews* and *Otho F. Matthews* for plaintiff.

(1) "In an action of divorce, a plaintiff is as much entitled to a decree when the evidence establishes a statutory ground of relief, as in any other action, and a court has no discretionary right to refuse it." Lynch v. Lynch, 87 Mo. App. 32; Ulrey v. Ulrey, 80 Mo. App. 48; Kilpatrick v. Kilpatrick, 80 Mo. App. 70. (2) A petition for divorce by the wife on the ground of indignities which allege the use of vile, and abusive language, and words reflecting upon the character of plaintiff sufficiently state a cause of action and if proven, plaintiff is entitled to a divorce and the court has no discretionary power and no authority of law to endeavor to force them to live together. Schweikert v. Schweikert, 108 Mo. App. 477. (3) "Where, from the peculiar nature of the inquiry, the information sought is peculiarly within the knowledge of the wife, the necessity for her testimony may outweigh public policy, so that the rule disqualifying her as to such statements may be relaxed." Schweikert v. Schweikert, 108 Mo. App. 477.

*John T. Barker* for respondent.

No brief filed by respondent.

BROADDUS, P. J.—The plaintiff instituted this suit against defendant for divorce on the 19th day of January, 1906. She alleges many statutory grounds authorizing a decree in her favor, if substantiated by sufficient proof. It is sufficient to say some of her charges were not well proven, and these we will omit from our consideration.

Some of them, however, in our opinion, are supported by substantial evidence. The parties were married in October, 1902, at which time plaintiff was seventeen years of age and defendant was nineteen years old. Plaintiff, among other things, testified that defendant

called her a "God-damned fool." On one occasion she asked him for some money to buy her baby some clothes, at which he began to swear and said he did not have any money for her and the baby, and if she wanted it to get out and work for it, that he guessed she could get "plenty of men on the string to provide money for her." On one occasion she asked him for money to buy necessaries. In answer he told her to go out and get it herself or get other men to give it to her.

The defendant was the owner of a race horse. On one occasion he went to the races at Shelbina. When he returned he brought a lady's picture and said to her that if she did not believe he had been having a good time he had something to show, and he took a lady's picture out of his pocket and showed it to her in the presence of her mother and said, "If you were half as good-looking as this woman, I would not be ashamed of you." He showed her a book with a name written in it in a lady's handwriting and said that she wrote her name on the leaf so that he would not forget where to write. She could only remember that the name of the woman was Maud. He also said further, "that he was the sportiest fellow over there, that he had more women on the string than anybody." On cross-examination she was asked if defendant ever struck her. She answered yes. She was then asked if she had made that charge in her petition. She answered yes. But her counsel stated that the petition contained no such charge, whereupon defendant's counsel repeated the question and she answered that he struck her several times.

The following letter was introduced in evidence, which was found in defendant's room where he was living at the time:

"La Plata, Mo., Dec. 2, '05.

"Mr. Cleve Wares:

"My Dearest Sweetheart:—I will write you a few lines letting you know I am going down to Lathrop next

Wednesday to work I and Mollie are going I got a letter from the hotel lady down there and she wants me to come and work and I would like very much to see you and have one more good talk with you before I have to leave you I hate to leave to before I got to go with you where I promised to go but I guess I will have to go or loose my place. She want me to come this Sunday but I couldn't get ready. I am Glad I got the place but I certainly hate to leave you I may never get to see you again after I leave here so I would like to have one long talk with you.

"Well I will close hoping to see your dear sweet and loving face before I go away.

"As every your friend
"IDA M. RICHARDSON."

"Mr. Cleve Wares
    "La Plata Mo.
"Mrs. Ida M. Richardson
        "Lathrop
(care of Lathrop Hotel) Mo.
"This is for my dearest and only sweet heart that I love,
    Mr. Cleve Wares,
"The world is round
The sea is deep,
And in your arms
I hope to sleep,
        "IDA."

Plaintiff's mother, Mrs. Roan Wolff, testified that she heard defendant say to plaintiff, if she wanted to have money that "she had plenty of strings to get money." Plaintiff introduced two witnesses who swore to her good reputation. The court would not permit any other testimony as to that matter as plaintiff's reputation had not been assailed.

The court dismissed plaintiff's bill and she appealed. Among others, the court gave the following as his reason for dismissing plaintiff's bill. "Society is inter-

ested in this matter. The solidity of the social fabric depends upon the sanctity of the domestic relation. It cannot be torn down by every trivial difference between husband and wife, especially when they are very young people. If the parties to this case were older, and at an age to consider their relations to each other seriously and thoughtfully, I might consider this testimony with some degree of gravity, but in the circumstances I deem it to the advantage of society and of the young people at interest to dismiss this bill," etc.

The evidence of plaintiff and her mother that defendant had said to her that if she wanted money she could get it from other men, that she could get plenty of men on the string to provide money for her, was well established. The defendant's counsel appeared and cross-examined plaintiff and, if the charge was not true it ought to have been disproved, or an attempt at least been made for that purpose. For a man to suggest to a virtuous wife to get money from other men by sexual commerce with them, which is in effect the language used by the husband to the wife, it seems to us to constitute such a statutory indignity as to render the condition intolerable. It is inconceivable how a good woman of pure mind could look upon such a husband without the utmost detestation. And whether he be an old man or young man it evidences a trait of character that ought to exclude him from the decent circles of domestic life. We can not see why the fact, that the parties to the marriage contract being young should affect their domestic rights and duties. It is true that we may and do make some allowance for minor happenings in the lives of the young that we do not excuse in the conduct of persons of mature years. But when we consider the marriage relation and the reciprocal duties that relation imposes, all husbands and wives stand upon an equal footing under the law. And an indignity of the young husband towards his young wife is just as cruel and distressing

as an indignity from a mature husband to his wife of mature age. And perhaps more so. In many instances such would be the case, but in other instances it would not. The legal rights, however, would be the same.

"In an action of divorce, a plaintiff is as much entitled to a decree when the evidence establishes a statutory ground of relief as in any other action, and the court has no discretionary right to refuse it." [Lynch v. Lynch, 87 Mo. App. 32, and cases cited.] It was a statutory indignity for the defendant to tell plaintiff that he had a good time with other women while he was at the races, and that if she was half as good-looking as the other woman he was talking about, he would not be ashamed of her.

And it devolved upon defendant to account for the endearing letter to him from Ida Richardson. His failure to show that he did not invite such correspondence leads to the inference that he was unduly intimate with the writer and that the warm expression that it contained of affection for him grew out of a somewhat intimate association between the writer and the recipient of the letter.

The plaintiff made out a good case and was entitled to a decree of divorce. The cause is reversed and a decree of divorce granted to plaintiff with the care and custody of her infant child, Clifford Roan Wares. All concur.